IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS,
DALLAS DIVISION

| | | |
|---|---|---|
| NORTHWEST PIPE COMPANY, an Oregon corporation, | § | |
| Plaintiff, | § | |
| v. | § | Case No. ________________ |
| TRINITY HIGHWAY PRODUCTS, LLC, a Delaware limited liability company, | § | JURY DEMAND |
| Defendant. | § | |

**COMPLAINT**

For its Complaint against Defendant Trinity Highway Products, LLC ("Trinity" or "Defendant"), Plaintiff Northwest Pipe Company ("NW Pipe" or "Plaintiff") alleges as follows:

**INTRODUCTION**

1. Plaintiff NW Pipe seeks to recover the cost of galvanized steel coils that Defendant Trinity is contractually obligated to pay.

**JURISDICTION AND VENUE**

2. The Court has subject matter jurisdiction under 28 U.S.C. § 1332(a)(1) because this is a civil action between citizens of different states and the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs.

3. Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(1) because Defendant Trinity resides in this district.

**THE PARTIES**

4. Plaintiff NW Pipe is an Oregon corporation with its principal place of business in the State of Washington.

5. Defendant Trinity is a Delaware limited liability company. Its sole member is Trinity Industries, Inc., a Delaware corporation with its principal place of business in Texas.

## FACTUAL BACKGROUND

6. Prior to June 1, 2011, Plaintiff NW Pipe manufactured its traffic systems product line ("the Business") at its Houston, Texas manufacturing facility, which facility also manufactured other NW Pipe product lines.

7. On June 1, 2011 (the date of "Closing"), NW Pipe and Defendant Trinity entered into a Purchase and Sale Agreement ("Purchase Agreement") (attached hereto as Exhibit 1), whereby (1) Trinity purchased from NW Pipe substantially all of the assets that related to and comprised the Business; and (2) Trinity assumed certain liabilities related to the Business.

8. Under a separate Transition Services Agreement also dated June 1, 2011, between NW Pipe and Trinity (attached hereto as Exhibit 2), NW Pipe continued to manufacture traffic systems products for Trinity at the Houston facility during a transition period ("Transition Period") before turning over full control of the operations to Trinity. During the Transition Period, NW Pipe continued to process galvanized steel coils into final products sold by Trinity to Trinity's customers. At all material times from prior to the Closing to the present, the Business was the only operation of NW Pipe that utilized galvanized steel coils.

9. The liabilities that Trinity assumed under the Purchase Agreement included the "obligations of [NW Pipe] for unfilled purchase orders relating to the Business and entered into in the ordinary course of business, a list of which as of the date of Closing being set forth in Schedule 2.02(B) of the Disclosure Schedule (the 'Purchase Orders')." (Purchase Agreement § 2.02(b).) Schedule 2.02(B) is attached hereto as Exhibit 3.

10. Pursuant to the Purchase Agreement, Trinity agreed to "pay, honor and discharge

when due and payable" the Purchase Orders and certain other contractual obligations of NW Pipe (collectively, the "Subject Obligations"). (Purchase Agreement § 2.02.) In addition, Trinity agreed to "indemnify and hold harmless" NW Pipe for the "Subject Obligations." (Purchase Agreement § 7.03.)

11. Prior to the date of Closing, NW Pipe submitted purchase orders to certain of its steel vendors for galvanized steel coils in the ordinary course of business. NW Pipe listed the purchase orders for the coils that were unfilled as of the date of Closing on Schedule 2.02(B).

12. After the date of Closing, NW Pipe paid the invoices for the coils whose purchase orders are listed on Schedule 2.02(B). The coils were delivered to the facilities of the Business at NW Pipe's Houston plant, were made into traffic systems products by NW Pipe for the benefit of Trinity, and then were provided to Trinity for resale pursuant to the Transition Services Agreement. Trinity thereafter sold those traffic systems products to Trinity's customers and retained the revenues from those products.

## CLAIMS FOR RELIEF

### *A. Breach of Contract*

13. NW Pipe incorporates by reference the allegations contained in paragraphs 1-12 and paragraph 23.

14. Trinity reimbursed NW Pipe for some of the purchase orders for coils that NW Pipe listed on Schedule 2.02(B). However, Trinity has not reimbursed NW Pipe for certain invoices for coils whose purchase orders are listed on Schedule 2.02(B) (the "Invoices"). NW Pipe paid the Invoices, which totaled $1,410,743.60, on or about June 9 and June 16, 2011. Attached as Exhibit 4 is a copy of Schedule 2.02(B) that highlights the purchase orders that relate to the Invoices.

15. Pursuant to Section 7.03 of the Purchase Agreement, NW Pipe is entitled to indemnification from Trinity in the amount of $1,410,743.60.

16. NW Pipe has fully performed its obligations under the Purchase Agreement.

17. Despite NW Pipe's demand for reimbursement for the Invoices, Trinity has failed to pay NW Pipe.

18. Under Section 7.04 of the Purchase Agreement, NW Pipe is entitled to interest "at the prime rate established from time to time at JP Morgan Chase Bank of Texas, from the date" NW Pipe paid the Invoices.

***B. Unjust Enrichment***

19. NW Pipe incorporates by reference the allegations contained in paragraphs 1-12 and paragraphs 14-18.

20. Trinity sold the traffic systems products that contained the galvanized steel coils that were billed to NW Pipe in the Invoices.

21. Trinity kept the revenues that it received from the traffic systems products and has not reimbursed NW Pipe for the amounts reflected on the Invoices.

22. NW Pipe has conferred a benefit on Trinity in the amount of $1,410,743.60 as reflected on the Invoices; Trinity was and is aware that it has received that benefit; and, under the circumstances, it would be unjust to allow Trinity to retain that benefit without paying NW Pipe the $1,410,743.60 reflected on the Invoices.

## CONDITIONS PRECEDENT

23. In accordance with Federal Rule of Civil Procedure 9(c), NW Pipe alleges that all conditions precedent to its claims for relief have occurred or been performed.

## ATTORNEYS' FEES

24. NW Pipe incorporates by reference the allegations contained in paragraphs 1-12, paragraphs 14-18, and paragraphs 20-22.

25. As a result of the acts described above, NW Pipe has been forced to retain the undersigned attorneys to prosecute this action. Pursuant to TEX. CIV. PRAC. & REM. CODE §§ 38.001, *et seq.*, Trinity is obligated to pay NW Pipe its reasonable and necessary attorneys' fees.

## PRAYER

**WHEREFORE**, NW Pipe demands a trial by jury and prays for judgment as follows:

1. An award against Trinity in the amount of $1,410,743.60;

2. An award for pre-judgment interest at the prime rate established by JP Morgan Chase Bank of Texas on the date(s) NW Pipe paid the Invoices, pursuant to Section 7.04 of the Purchase Agreement;

3. An award for post-judgment interest;

4. Costs of court;

5. An award for its reasonable and necessary attorneys' fees pursuant to TEX. CIV. PRAC. & REM. CODE §§ 38.001, *et seq.*; and

6. Such additional relief as is just and appropriate.

DATED this fourteenth day of April, 2015.

Respectfully submitted,

GRAY REED & McGRAW, P.C.

By: */s/ Charles W. Sartain*
Charles W. Sartain
State Bar No. 17653000
csartain@grayreed.com
William Drabble
State Bar No. 24074154
wdrabble@grayreed.com

1601 Elm Street
4600 Thanksgiving Tower
Dallas, Texas 75201
Telephone: 214.954.4135
Facsimile: 214.953.1332

ATER WYNNE LLP

By: */s/ Michael J. Sandmire*
Michael J. Sandmire
Oregon State Bar No. 904410
(*Motion for Pro Hac Vice Filed Simultaneously with the Complaint*)
mjs@aterwynne.com
Jeff M. Peterson
OSB No. 115723
(*Motion for Pro Hac Vice Filed Simultaneously with the Complaint*)
jmp@aterwynne.com

1331 NW Lovejoy Street, Suite 900
Portland, OR 97209-3280
Telephone: (503) 226-1191
Facsimile: (503) 226-0079

ATTORNEYS FOR PLAINTIFF
NORTHWEST PIPE COMPANY